```
               UNITED STATES DISTRICT COURT
                  DISTRICT OF MINNESOTA
                 Civil No. 12-795(DSD/JJK)
```

William McGinnis,

       Plaintiff,

v.                                                            **ORDER**

Soo Line Railroad Company,
doing business as
Canadian Pacific,

       Defendant.

      Scott Moriarity, Esq. and Lockridge, Grindal, Nauen, PLLP, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401, counsel for plaintiff.

      Tracey Holmes Donesky, Esq. and Stinson, Leonard, Street, LLP, 150 South Fifth Street, Suite 2300, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the motion for summary judgment by defendant Soo Line Railroad Company, doing business as Canadian Pacific (Canadian Pacific). Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion.

## BACKGROUND

This employment dispute arises out of the March 14, 2011, termination of plaintiff William McGinnis by Canadian Pacific. McGinnis was a conductor trainee with Canadian Pacific and was fifty-seven years old at the time of his termination. Thomson Decl. Ex. U.

McGinnis began his employment with Canadian Pacific on January 3, 2011. Am. Compl. ¶ 12. Canadian Pacific requires conductor trainees to undergo a training program, including both classroom training and eight weeks of on-the-job training (OJT). Thomson Decl. Ex. H, at MCG000080-81. After finishing classroom training, McGinnis and five other trainees transferred to the Enderlin, North Dakota railyard for OJT. Id. at MCG000078; id. Ex. U.

During OJT, trainees are monitored by conductor coaches who assess trainees' performance in field placement evaluations (conductor coach evaluations). Id. Ex. I, at CP000583. Additionally, twice during OJT, conductor trainees undergo pass/fail "field placement supervisor student conductor evaluations" (FPS evaluations) administered by Field Placement Supervisors. Id. at CP000588; Lulay Dep. 54:8-25. If a trainee passes the first FPS evaluation, he is eligible to take the final qualification FPS evaluation, which determines whether he was eligible to begin work as a full-time conductor. Lulay Dep. 118:7-13, 119:8-11. If a trainee fails the first FPS evaluation, however, he is given the chance to retake the first evaluation. Thomson Decl. Ex. J, at CP001647.

Thomas Lulay was McGinnis's Field Placement Supervisor at Enderlin. Lulay Dep. 116:23-117:3. On February 22, 2011, McGinnis had his first FPS evaluation. Thomson Decl. Ex. O. McGinnis failed the evaluation, registering "unsatisfactory" scores in six

2

of twenty-six categories. See id. After the evaluation, Lulay told McGinnis, "For a man of your age and experience, I expected more." McGinnis Dep. 303:6-7

McGinnis had his second FPS evaluation on March 14, 2011. Thomson Decl. Ex. P. During the second FPS evaluation, Lulay remarked, "For a man who's not supposed to be too old to do this job, you sure do forget a lot." McGinnis Dep. 266:13-15. McGinnis failed the second FPS evaluation, registering "unsatisfactory" scores in seven categories. Thomson Decl. Ex. P. That same day, Lulay terminated McGinnis. Lulay Dep. 100:13-101:11.

On March 29, 2012, McGinnis filed this action, alleging age discrimination under the Age Discrimination in Employment Act of 1967 (ADEA)[1]. Canadian Pacific moves for summary judgment.

### DISCUSSION

**I. Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of

---

[1] McGinnis also alleged a whistleblower claim under North Dakota law. At the hearing, McGinnis waived the whistleblower claim and, as a result, summary judgment is warranted as to that claim.

the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists — or cannot exist — about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

**II. Age Discrimination**

McGinnis argues that Canadian Pacific discharged him from the conductor trainee program due to age discrimination. "The ADEA prohibits discrimination against employees, age 40 and over, because of their age." Rahlf v. Mo-Tech Corp., 642 F.3d 633, 636-37 (8th Cir. 2011) (citing 29 U.S.C. §§ 623(a)(1), 631(a)). To succeed on an age discrimination claim, McGinnis "must show, by a

preponderance of the evidence, that age was the but-for cause of the challenged adverse employment action." Gibson v. Am. Greetings Corp., 670 F.3d 844, 856 (8th Cir. 2012) (citation and internal quotation marks omitted). In ADEA cases, "the claimant may either offer direct evidence of the discrimination or satisfy the burden-shifting scheme established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 [(1973)]." Holmes v. Trinity Health, 729 F.3d 817, 821 (8th Cir. 2013) (citations omitted).

    **A.**    **Direct Evidence**

McGinnis first argues that several remarks from Lulay constitute direct evidence of age discrimination. "Direct evidence is that which shows a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." St. Martin v. City of St. Paul, 680 F.3d 1027, 1033 (8th Cir. 2012) (citation and internal quotation marks omitted). Direct evidence "most often comprises remarks by decisionmakers that reflect, without inference, a discriminatory bias." McCullough v. Univ. of Ark. for Med. Scis., 559 F.3d 855, 861 (8th Cir. 2009) (citations omitted). "Direct evidence refers to the causal strength of the proof, not whether it is circumstantial evidence." Young-Losee v. Graphic Packaging Int'l, Inc., 631 F.3d 909, 912 (8th Cir. 2011) (citation and internal quotation marks omitted).

Here, McGinnis argues that direct evidence of discrimination exists because (1) after discovering that McGinnis had twenty-eight years of experience in the railroad industry, Lulay said, "[Twenty-eight] years railroad experience, huh?  Then you know how it is, don't you?," McGinnis Dep. 239:10-11; (2) after McGinnis and other trainees said they wanted to become engineers, Lulay singled out McGinnis to ask, "Why do you want to become an engineer?  Because you can't do [conducting]?  If you can't do [conducting,] you may as well leave," id. at 247:25-248:3; (3) after the first FPS evaluation, Lulay said, "For a man of your age and experience, I expected more," id. at 303:6-7; and (4) during the second FPS evaluation, Lulay commented, "For a man who's not supposed to be too old for this job, you sure do forget a lot," id. at 266:13-15.

Such remarks do not constitute direct evidence of discrimination.  The first two comments are, at most, tangentially-related to age and are wholly unconnected to the subsequent termination.  See Mohr v. Dustrol, Inc., 306 F.3d 636, 640-41 (8th Cir. 2002) (finding comments "by decisionmakers unrelated to the decisional process" insufficient to demonstrate direct evidence), abrogated on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90, 95 (2003). Moreover, the latter two comments, though they refer to age, require the court to infer discriminatory animus. Such inferences are not proper under the direct evidence framework, especially given the ADEA's requirement of but-for causation.  See

6

McCullough, 559 F.3d at 861; see also, e.g., Baker v. Silver Oak Senior Living Mgmt. Co., L.C., 581 F.3d 684, 688 (8th Cir. 2009) (finding direct evidence of age discrimination where decisionmaker gave directions to "fire certain workers in their 50s and 60s so that [facility] could hire younger workers who would be better workers, have more energy, be more enthusiastic and stimulate the residents" (internal quotation marks omitted)). As a result, the court finds that the comments at issue are not direct evidence of age discrimination.

### B.  McDonnell Douglas Analysis

Without direct evidence of discrimination, the court analyzes McGinnis's claim under the McDonnell Douglas framework. See Haigh v. Gelita USA, Inc., 632 F.3d 464, 468 (8th Cir. 2011). Under McDonnell Douglas, a plaintiff must first establish a prima facie case of age discrimination by showing "(1) he is over 40 years old, (2) he met the applicable job qualifications, (3) he suffered an adverse employment action, and (4) there is some additional evidence that age was a factor in the employer's termination decision." Rahlf v. Mo-Tech, 642 F.3d 633, 637 (8th Cir. 2011) (citation omitted). "Once a plaintiff establishes a prima facie case, the burden shifts to [the employer] to provide a legitimate, nondiscriminatory reason for the [adverse employment action]." Gibson v. Am. Greetings Corp., 670 F.3d 844, 856 (8th Cir. 2012) (alterations in original) (citation and internal quotation marks

7

omitted). "Finally, if [the employer] provides such a reason, the burden returns to [the plaintiff] to prove [the employer's] reason was mere pretext for discrimination." Id. (alterations in original) (citation and internal quotation marks omitted).

Here, even if McGinnis could establish a prima facie case of age discrimination, Canadian Pacific has provided a legitimate, nondiscriminatory reason for his discharge: that McGinnis failed his FPS examinations. An employer's burden of showing a legitimate, nondiscriminatory reason for termination is not onerous. Bone v. G4 Youth Servs., LLC, 686 F.3d 948, 954 (8th Cir. 2012), cert. denied, 133 S. Ct. 1252 (2013). Canadian Pacific has met this burden, and the burden shifts to McGinnis to demonstrate a material issue of fact as to whether the proffered reason was pretextual.

"To demonstrate pretext, a plaintiff must present sufficient evidence to demonstrate both that the employer's articulated reason for the employment action was false *and* that discrimination was the real reason." Wilking v. Cnty. of Ramsey, 153 F.3d 869, 874 (8th Cir. 1998) (emphasis in original) (citation and internal quotation marks omitted). McGinnis argues that the proffered reason was pretextual because (1) he was denied a reasonable opportunity to prepare for his first FPS examination, (2) he was tested on hand

8

signals during the examination and other trainees were not and (3) he was terminated despite performing as well as younger conductor trainees.[2]

McGinnis first argues that he was denied a reasonable opportunity to prepare because he had worked in the Enderlin yard for only two days prior to his first FPS evaluation. McGinnis Dep. 261:25-262:2. The timing of the FPS evaluation, however, complied with Canadian Pacific's written policy, which provides that the first examination occurs "[i]n or near the 6th week of OJT" and "at the discretion of the Field Placement Supervisors." Thomson Decl. Ex. J, at CP001647. Thus, the timing of the first FPS evaluation does not support an inference of pretext. See Rahlf, 642 F.3d at 639 ("An employer's failure to follow its own policies may support an inference of pretext." (citation and internal quotation marks omitted)).

McGinnis next argues that Lulay held him to a higher standard than other trainees by requiring him to demonstrate proficiency in hand signals during his FPS evaluations. Canadian Pacific responds that Lulay sometimes tested hand signals and sometimes did not, depending on the circumstances of each evaluation. See Lulay Dep.

---

[2] McGinnis also cites to Lulay's comments in arguing that the proffered reason was pretextual. Such comments, however, without more, are insufficient to defeat the motion for summary judgment. See Simmons v. Oce-USA, Inc., 174 F.3d 913, 916 (8th Cir. 1999) ("[T]he offensive remarks made ... outside of the decision making process, without more, are not enough to create a trialworthy issue of pretext." (citations and internal quotation marks omitted)).

9

126:5-18. Indeed, Lulay tested hand signals during the FPS evaluations of three other trainees in McGinnis's cohort - Jacob Haraldson, Robert Olson and Steven Potter. See Moriarity Decl. Ex. 2. Moreover, Lulay opted not to test McGinnis on hand signals during his subsequent examination. See Thomson Decl. Ex. P, at CP000045. As a result, McGinnis has not introduced any evidence that the hand signal requirement was a deviation from Canadian Pacific policy, and it is not indicative of pretext.

McGinnis also argues that he was treated differently than similarly-situated younger trainees. At the pretext stage, McGinnis must satisfy the rigorous standard for establishing that similarly-situated employees were treated differently. See Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 853 (8th Cir. 2005), abrogated on other grounds by Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011). "To be similarly situated, the comparable employees must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct *without any mitigating or distinguishing circumstances*." Tolen v. Ashcroft, 377 F.3d 879, 882 (8th Cir. 2004) (emphasis added) (citations and internal quotation marks omitted).

Here, McGinnis argues that other trainees passed their FPS evaluations despite having up to four "unsatisfactory" scores. See, e.g., Moriarity Decl. Ex. 2, at CP 002773-74. McGinnis, however, had six and seven "unsatisfactory" scores on each of his

10

two evaluations. As a result, McGinnis and the trainees receiving four "unsatisfactory" scores were not similarly-situated, and Canadian Pacific's different treatment of them is not indicative of pretext.

Finally, McGinnis argues that he was terminated despite scoring as high as other trainees on the conductor coach evaluations. Specifically, McGinnis argues that he had the same "average score"[3] on his conductor coach evaluations as trainees Eric Gast and Desmond Moller, who were not terminated. See Mem. Opp'n 14. This composite average score is a post-hoc creation, however, and there is no evidence in the record that Canadian Pacific considered average scores of any kind in making employment decisions. Moreover, Gast and Moller are not proper comparators because, during their two respective FPS evaluations, Gast received three total and Moller received one total "unsatisfactory" rankings. See Moriarity Decl. Ex. 2. As a result, the different treatment of Gast and Moller, as compared to McGinnis – who had thirteen total "unsatisfactory" scores in the two evaluations - is not indicative of pretext. See Tolen, 377 F.3d at 883. Therefore,

---

[3] During conductor coach evaluations, conductor coaches scored trainees from "1" to "4" on each of twenty-one categories. See Thomson Decl. Ex. I, at CP000583-84. McGinnis has averaged the scores for each trainee by including the scores for each category and each conductor coach evaluation.

11

McGinnis has not presented sufficient evidence from which a reasonable jury could determine that age was the but-for cause of his termination, and summary judgment is warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion for summary judgment [ECF No. 58] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 3, 2014

                                       s/David S. Doty
                                       David S. Doty, Judge
                                       United States District Court